Case 14-82161    Doc 45    Filed 09/02/14    Entered 09/02/14 16:42:38    Desc Main
                              Document      Page 1 of 9

107983.00002

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| HEARING HELP EXPRESS, INC. | ) Chapter 11 |
| | ) |
| Debtor, | ) Case No.: 14-82161 |
| | ) |
| | ) JUDGE THOMAS M. LYNCH |
| | ) |

## AGREED FINAL ORDER AUTHORIZING
## USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION

Upon Hearing For Entry Of Agreed Order Authorizing Use of Cash Collateral (the "Cash Collateral Motion") filed by Hearing Help Express, Inc. ("HHE", or the "Debtor"), and Better Hearing, LLC ("Secured Party") pursuant to §§ 361, 363, 503 and 507 of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Bankruptcy Rule 4001-2, seeking authority for the Debtor to use Cash Collateral (as defined herein) of the Secured Party.

**THE DEBTOR AND SECURED PARTY HEREBY STIPULATE AS FOLLOWS:**

A.    Petition Date.    On July 14, 2014 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the bankruptcy case of the Debtors shall be referred to as, the "Case").

B.    Debtor in Possession.    The Debtor has continued in the management and possession of its business and properties as Debtors-in-Possession pursuant to Bankruptcy Code §§ 1107 and 1108. No Official Committee of Unsecured Creditors has been appointed in this Case as of the date hereof.

2665796.1

C. <u>Jurisdiction and Venue</u>. This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D. <u>Prepetition ClaimsAgainst the Debtors</u>. Subject to the provisions of paragraph 7 below, the Debtors acknowledge, agree and stipulate that:

(i) Pursuant to a Secured Promissory Note and Security Agreement dated as of September 27, 2012 entered into by the Debtor and Thomas H. Roberts III Trust (all of which having been assigned to the Secured Party on January 22, 2014, otherwise modified from time to time, the "Loan Agreement" and together with all other security agreements, documents, notes, instruments and any other agreements delivered pursuant thereto or in connection therewith, (the "2012 Financing Documents");

(ii) Pursuant to a Secured Promissory Note dated February 8, 2013, entered into by the Debtor and Thomas H. Roberts III Trust (all of which having been assigned to the Secured Party on January 22, 2014, otherwise modified from time to time, the "Loan Agreement" and together with all other security agreements, documents, notes, instruments and any other agreements delivered pursuant thereto or in connection therewith, (the "2013 Finance Documents").

(iii) The Debtor was, as of the Petition Date, indebted to the Secured Party on account of the Indebtedness (as defined below), which is comprised of amounts due in connection with all of above Financing Documents and unpaid fees, costs and expenses in an unliquidated amount. For purposes of this Order, the term "Indebtedness" shall mean and include, without duplication, any and all amounts owing or outstanding under the 2012 Financing Documents, and 2013 Financing Documents, "the Financing Documents", and all interest owing in respect of, such amounts, which as of July 14, 2014, such total Indebtedness was $2,401,635.00, plus allowed attorneys' fees and costs that

are chargeable or reimbursable under the applicable provisions of the Financing Documents and this Order;

(iv)  Pursuant to the Financing Documents, the Debtor granted to and/or for the benefit of Secured Party pledges, liens and security interests (the "Prepetition Liens") to secure the Indebtedness on all personal property of the Debtor pursuant to the Security Agreement.;

(v)  As of the Petition Date and immediately prior to giving effect to this Order, (a) the Financing Documents and Security Agreement are valid and binding agreements and obligations of the Debtor and are enforceable against the Debtor in accordance with their terms, (b) the Prepetition Liens (i) constitute valid, binding, enforceable and perfected priority security interests and liens, but only to the extent such permitted liens are valid, enforceable, non-avoidable liens and security interests that are perfected prior to the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code), and (ii) are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (c) the Indebtedness constitutes the legal, valid and binding obligations of the Debtor, and the Indebtedness, and any amounts paid at any time to the Secured Party on account thereof or with respect thereto, are not subject to (i) any objection, offset, defense or counterclaim of any kind or nature, or (ii) avoidance, reduction, disallowance, impairment, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and

(vi)  The Debtor has waived, discharged and released any right it may have to challenge any of the security for the Indebtedness.

(vii)  Copies of the Financing Documents are attached to the Secured Party's Proof of Claim filed in this case with the Clerk of the Court for the Northern District of Illinois.

2665796.1

**Based upon the foregoing, the Cash Collateral Motion, and the record before the Court with respect to the Cash Collateral Motion, and good and sufficient cause appearing therefor,**

**IT IS HEREBY ORDERED that:**

1. <u>Authorization to Use Cash Collateral</u>. Subject to the terms and conditions of this Order, the Debtors may use Cash Collateral to pay actual, ordinary, and necessary expenses set forth in the budget attached hereto as Exhibit "A," or as such budget may be modified in writing with the prior written consent of, which shall not be unreasonably withheld (the "<u>Budget</u>"). In no event shall the Debtors use Cash Collateral to pay any items in excess of 115% of the amount set forth in the Budget, either by line item or in the aggregate, measured on a bi-weekly basis.

2. The Secured Party is hereby granted, retroactive to the Petition Date and without the necessity of any additional documentation or filings, valid, enforceable, non-avoidable, and fully perfected liens (the "Adequate Protection Liens") of the same validity, priority and extent as the liens they are replacing, subject only to any valid and enforceable preexisting liens, upon any property that the Debtor acquires after the Petition Date, but excluding any avoidance actions under chapter 5 of the Bankruptcy Code.

3. <u>Adequate Protection Superpriority Claims</u>. Pursuant to Sections 503(b) and 507(b) of the Bankruptcy Code and to the extent of any Deficiency, the Court grants to the Secured Party an allowed superpriority administrative expense claim in each of the Cases (the "<u>Adequate Protection Superpriority Claim</u>"). The Adequate Protection Superpriority Claim shall be junior to all prior secured claims and to the quarterly fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930; or the fees and expenses of the Clerk of this Court.

4. <u>Adequate Protection Payments</u>.

2665796.1

A.  The Debtor shall pay to the Secured Party on the 1st day of each month hereafter the sum of $10,000.00 (Adequate Protection Payment).

B.  The Secured Party's application of the above monthly payments to interest is without prejudice to the rights of any party to seek reallocation of the payments.

5.  The Secured Party's receipt and application of the Adequate Protection Payment by the Debtor, is without prejudice to the rights of any party to seek reallocation of the payments.

6.  <u>The Debtor's Obligations</u>.  The Debtor shall maintain insurance of the kind covering the Prepetition Collateral including, without limitation, fire, hazard, comprehensive, and public liability, as may be currently in effect, and obtain such additional insurance in an amount as is appropriate for the businesses in which the Debtor is engaged.

7.  Notwithstanding anything herein to the contrary, including the Debtor's stipulations and releases herein solely as they relate to the Secured Party, (a) the Debtor shall have until 28 days from the date of this Order, (b) the Committee, if appointed, shall have until the later of (i) 60 days from the date of appointment of the Committee and (ii) 75 days from the entry of this Order, and (c) any other non-debtor party in interest (including, without limitation, any receiver, administrator or trustee appointed or elected in the Case or any successor case or in any jurisdiction) shall have until 75 days from the entry of this Order (the applicable date, (the "Investigation, Termination Dates")) to investigate the validity, perfection, and enforceability of the Prepetition Liens or to assert any other claims or causes of action against the Secured Party. If the Debtor, Committee (if appointed), or any non-debtor party in interest, determines that there may be a challenge by the Investigation Termination Dates, the Debtor, Committee (if appointed) or other non-debtor party in interest shall have only until the applicable Investigation Termination Date to commence an adversary proceeding or contested

5

2665796.1

matter (each, a "Challenge"), as required by the applicable Bankruptcy Rules, on behalf of the Debtor's estate setting forth the basis of any such Challenge. In no event shall the filing of any such Challenge affect any of the rights, privileges, powers or remedies of the Secured Party under this Order or the Financing Documents pending a ruling on such Challenge. If no Challenge is filed on or before the appropriate Investigation Termination Date (or such other later date as extended by the written consent of the Debtor and the Secured Party), then the agreements, acknowledgements, releases and stipulations contained in paragraph D of this Order shall be irrevocably binding on the estates, the Committee (if appointed) and all other parties in interest. If the Debtor initiates a Challenge, the Secured Party may withdraw its consent to this Agreed Order which shall terminate upon 7 days notice to the Debtor.

8.  Retention of Jurisdiction. The Court has and will retain jurisdiction to enforce this Order according to its terms.

9.  Automatic Stay. The Automatic Stay is hereby vacated and modified to the extent necessary to permit (a) the Debtors and the Bank to commit all acts and take all actions necessary to implement this Order, and (b) all acts, actions, and transfers contemplated herein.

2665796.1

10.     Status Hearing. This matter is set for a status hearing on _____,
2014 at 10:30 A.M.

                                                                                                                                       _____
Hon. Thomas M. Lynch
United States Bankruptcy Judge

AGREED:

| For Hearing Help Express, Inc. | For the Secured Party |
|---|---|
| /s/ James E. Stevens | /s/L. Judson Todhunter |
| James E. Stevens (3128256) | L. Judson Todhunter (ARDC 2840510) |
| Barrick, Switzer, Long, Balsley & Van Evera, LLP | Howard & Howard Attorneys PLLC |
| 6833 Stalter Drive | 200 S. Michigan Avenue, #1100 |
| Rockford, Illinois 61108 | Chicago, IL 60604 |
| Telephone (815) 962-6611 | Telephone (312) 372-4000 |

7

2665796.1

# EXHIBIT "A"

# BUDGET

2665796.1

**Hearing Help Express, Inc.**
**Budget**
**For September, 2014**
**Submitted 8/26/2014**

|  | September 2014 |
|---|---:|
| **REVENUES** | |
| Payments Received | $ 700,000 |
| Refunds and Rebates | $ (30,000) |
| Total Revenues | $ 670,000 |
| | |
| **EXPENDITURES** | |
| Accounts Receivable Collection | $ 200 |
| Advertising | $ 145,000 |
| Bank and credit card charges | $ 8,000 |
| Computer resources | $ 10,000 |
| Consulting fees | $ 2,500 |
| Contract Employees | $ 11,000 |
| Dues and subscriptions | $ 1,600 |
| Employee benefits | $ 400 |
| Employee training | $ 200 |
| Equipment purchases | $ 400 |
| Insurance, Blue Cross Blue Shield | $ 26,000 |
| Insurance: life, property, business, workmans comp | $ 8,500 |
| Insurance, Vehicle | $ 600 |
| Leases | $ 1,100 |
| Meals and entertainment | $ 1,000 |
| Merchandise | $ 180,000 |
| Office expenses | $ 2,500 |
| Payroll processing | $ 800 |
| Postage and freight, shipping | $ 40,000 |
| Professional fees | $ 8,000 |
| Rent and Real Estate Taxes | $ 33,360 |
| Repairs and maintenance | $ 6,000 |
| Sales tax | $ 1,500 |
| Shipping and quality control supplies | $ 4,000 |
| Telephone | $ 4,500 |
| Travel | $ 3,000 |
| US Trustee Quarterly Fee (first payment Oct 2014) | $ - |
| Utilities | $ 3,000 |
| Vehicle expense | $ 1,000 |
| Wages and payroll taxes * | $ 152,000 |
| Total Expenditures | $ 656,160 |
| | |
| Net Cash Flow | $ 13,840 |

Cash Budget                                                                                         8/26/2014